Good morning and may it please the court. My name is Daniel Johnson for the Plaintiff Appellant James Bryan. And I'd like to try to reserve 10 minutes of my time. Reserve 10 minutes? Well, I should say that we really like rebuttal to be rebuttal. So if you've got something to say, say it. Will do. Okay. Thank you. The District Court dismissed this case on a Rule 12b-6 motion. And there are three different problems with its ruling. First of all, it based its ruling on a factual conclusion that is contrary to the allegations in the complaint. We allege that Wal-Mart terminated Mr. Bryan based on a neutral policy that it applied to all its pharmacists nationwide. Wal-Mart asserted in briefing that it terminated Mr. Bryan because of his own personal past criminal history. The District Court accepted the assertion of Wal-Mart and it was bound to rather instead accept the assertions in the complaint. Well, I guess my worry about this is if I don't look at Exhibit F, but I look at everything else that was submitted to the court in response to your complaint, it seems as if Mr. Bryan was fired for criminal conduct, not disability. Well, the, that. I read your complaint and I've been trying to read it pretty carefully because it seems to me there are things that I should put in there. But the only time that I have any in the complaint is 4.3, which says the Washington Board of Pharmacy suspended his license due to his eviction to or abuse of prescription drugs. But frankly, I don't find that in the exhibits. In fact, the termination was not for that at all. It was for forgery. There's actually no evidence whatsoever of why Wal-Mart did what it did. There's no evidence. And the only assertions we have that are admissible here are the allegations in the complaint. Oh, but just a minute. It seems to me that there are in the exhibits, the exhibit that says that the board did this as a result of forgery. Yeah, and I think the problem that the District Court had there is that it mistook what the Board of Pharmacy in the state of Washington did between 2002 and 2007 and what Wal-Mart did in 2011. Well, but here's the problem. I'm reading your complaint now, and I'm trying to say in the complaint whether it meets the Iqbal Twombly standard. You suggest that it was due to addiction to and abuse of prescription drugs, and yet I don't see how that led to his suspension if I read what's in the exhibits. In fact, how did the disability lead to the suspension? You've got a job to plead that. Where do you plead it? All you say is... I'm sorry, Your Honor. Do you mean the suspension by the Board of Pharmacy? No, but lead to his, if you will, suspension by Wal-Mart. Because the Board of Pharmacy did not suspend him as a result of his prescription drug habit. They suspended him because of forgery. The Board of Pharmacy suspended him on the basis of his criminal acts connected with drug addiction, and they actually required him to go through treatment. That was forgery. And then I read your response to the motion to dismiss that says that he was not terminated because of his prior history of forging prescriptions while he was employed at Rite-Aid. In fact, that's on page 5. And so, I mean, what I'm trying to do is look at your complaint and see if you've pled enough to get to where you want to get. Well, all we need to... Remember, this is a disparate impact case. I know what it is. So the motive that Wal-Mart had for terminating Mr. Bryan actually isn't the question, as it is in a disparate treatment case. I'm not trying to say that it's a disparate impact. This is a disparate case that has to do with what I understand is a neutral policy that somehow particularly discriminates against one set group. And all I'm trying to say is when I look at the complaint and I look at the exhibits to which you do not object, I can't match your, if you will, the abuse of prescription drugs or, if you will, the disability you may claim to why it was Wal-Mart terminated because Wal-Mart terminated based on what the pharmacy board did, and the pharmacy board did it on the basis of forgery. It doesn't have anything to do with disability. Well, to be clear, though, Your Honor, we don't know why Wal-Mart did what it did except the allegation in the complaint, which actually came from the mouth of Wal-Mart at the time they terminated him. Let's read the complaint, your allegation in the complaint. It says, the history of adverse action. Okay, so I look at the history of the adverse action, and it was because of forgery. It didn't have anything to do with disability. That's right, so that's why this is a disparate impact case. We have properly pled a disparate impact case. Well, again, disparate impact. The policy does not get rid of somebody because of drug addiction. No, and that's precisely right. It gets rid of somebody because of forgery. Well, it gets rid of somebody because of any adverse action, and we say, and we believe we can prove, that will tend to screen out people with disabilities, and the people with disabilities we represent here are those who are rehabilitated drug addicts. Let me focus then on what you just said. You say that you believe that this policy of Wal-Mart has a tendency to, that's in the statute, tend to screen out people with disability. Could you spell that out? How is that actually going to tend to adversely impact people with disabilities, that is to say people who have a drug problem? Well, because any pharmacist who at the time this policy was implemented or since has had lost or sought and did not receive employment at Wal-Mart because of that adverse action, and that adverse action was based on his or her drug addiction, is being terminated for that, and that person qualifies for protection under the ADA. Well, but let me ask you this. Does it screen out disproportionately people who are drug addicts, that is to say our pharmacists or people who work in the pharmacy with this licensing requirement? Are they particularly likely to be drug addicts? Are they particularly likely to have been fired because of some adverse action? I mean, I'm trying to figure out disparate impact and even what it means. I understand that it certainly has had the tendency to screen out your client, who was a drug addict, and as part of that addiction and his practices under that, he forges and writes himself prescriptions to feed his addiction. I get that. But in terms of to screen out within the meaning of the statute, do you have to show that merely that it does screen out drug addicts or that it disproportionately screens out drug addicts in a higher proportion than they exist in the population? What do you have to show? I believe the answer to that is you only have to show that it tends to screen them out and that it's a different standard under the ADA. And to screen out any? Yes. And you can see that. Let's look really at, that's a great question because that's exactly where I was going to go. It seems to me Lopez versus Pacific Maritime Association would control that situation and there Judge Graber said there's not enough pled. In fact, she not only said it wasn't enough pled, she said they waived it. Right. She said they alleged and litigated the wrong theory, the theory that Judge Fletcher is referring to where there's a proportionality test and you need to have a statistical showing. She said they pled the wrong one. They can't change horses now. But she didn't say you could do it any time. It's got to be a proportion. It's got to have something. And that's the thing that when I read your complaint I couldn't find. That's because we don't need to allege that and nor did Mr. Lopez. But he did. And then he litigated it. And then he appealed it. And then he brought it up only on appeal, this issue of, well, wait a minute. There's a different standard for disparate impact in the ADA. I think I'm going to use that one. And Judge Graber said, you can't do that now. It's too late. But we did that in the complaint. Let me ask you a second then. If he was fired for forgery, is there anything in your complaint that suggests that drug addiction causes one to forge? Well, we certainly allege that it caused Mr. Bryan to forge, yes. I'm just trying to – I mean, where does it say that? Where does it say that? It doesn't even talk about forgery in your complaint. Well, you're right. I mean, so I guess, again, I'm trying to figure out how can we – it doesn't seem to me you've alleged enough in this complaint to go to the case, which I think you might be able to make, which is 12112A. But it seems to me someone has to allege here that drug addiction causes one to forge. And I didn't find that here. Well, I suppose there – you certainly, Your Honor, are taking a different approach than Judge Layton did in the district court. He didn't find any Iqbal Kwambe problem. He simply said – Well, I understand what Judge Layton did, but this is a motion to dismiss, and I also understand my standard of review. And I'm not sure Judge Layton hit the right points on what he was really talking about. What I'm talking about, though, is if I dismiss this for a motion to dismiss, I've got to find in the complaint something that alleges what you can get to. I don't think you can get to disparate impact at all unless you go under 12112A. So then I tried to say, okay, I'm going to try to get there under 12112A, and I'm going to see if I can't get there. And, frankly, you didn't allege it. Supposing that the adverse board action was simply a filing error, does that screen out drug addicts? If there was only a filing error at the pharmacy, all filing errors would necessarily cause the pharmacy board to screen out these people. Would that screen out drug addicts? Well, this case isn't against the pharmacy board. It's against Walmart. I understand, but the Walmart, you're the allegation that says that Walmart terminates and refuses to hire the employees who have had a history of adverse action against their license by a state pharmacy board. So if the adverse board action was simple filing error, would that screen out drug addicts? It doesn't seem that it would. Well, that wouldn't be our case. Therefore, it seems to me that you have got to plead something that gets me to the point where you want to get me. But I thought, I mean, paragraph 6.3 alleges that Walmart's policy and practice screens out or tends to screen out a class of individuals with disabilities, which is 112A. Well, don't you need to allege some connection between why your client was fired and the disability? Yeah, the class that he belongs to, that he seeks to represent is people who are recovered drug addicts or alcoholics who have successfully completed a supervised rehabilitation program. That's the question. You stop there because when I get to what the board of pharmacy did, they didn't talk about his drug addiction. They didn't talk about anything one could call a disability. They only talked about forgery. So it seems to me you have to have some allegations or at least plead something that links me between what the board of pharmacy did and your client, which I don't find. And we allege that he was required by that board to go to drug treatment and that when he did that and completed it successfully, he went back to the board and the board said, you get your license back. So clearly underneath what you're reading in these documents is a drug addict who is rehabilitated who then qualifies for protection under the statute. Frankly, I gave you every bit of that. But it doesn't seem to me enough for you to allege I was fired, I have a disability, and therefore I have a suit. It seems to me you have to link the firing with the disability, which I couldn't find. Well, in a disparate impact case, you can't link it in the typical way of saying they did this because I'm a drug addict because we don't claim that. We claim they did it because of a policy. I'm not talking about having disparate treatment case. I'm talking about a disparate impact case. You've got the neutral policy. The neutral policy says I fire, at least you say, I fire or I don't hire if you have any adverse action. And then from that point, your next allegation is I have a drug disability. But you don't link the drug disability with what the pharmacy board did. Well, I would hope that on remand we would be able to add that allegation if that's the way the court rules. But I want to add one more very important thing before I go. And that is that in no event can an employer be allowed to terminate a rehabilitated drug addict like Mr. Bryan on the basis of his past criminal misconduct before he was employed because that would eviscerate what the ADA clearly explicitly protects, which is rehabilitated drug addicts. If all an employer ever has to do is say, oh, but you did something. I mean, I'm an employee for a few years, and then whenever I feel like getting rid of you, I'm going to say you did something five years before you came here that was criminal, so you're terminated. That can't be because then that would eviscerate any protection. Mr. Bryan would be able to be terminated on the basis of his past misconduct from every job he ever has. And every rehabilitated drug addict has, by definition, a past criminal history, every one of them. So they would never get any protection under this statute, which clearly was intended by Congress to offer some protection. Those who are no longer engaging in drug use, for which there's no allegation Mr. Bryan ever did after he was employed by Walmart. Okay, well, you had sought to save 10 minutes. We have managed to have you down so you owe us 30 seconds. We'll hear from the other side, but we'll give you a chance to respond. Thank you very much. May it please the Court, Ramon Hernandez here on behalf of Appellee Walmart Stores, Inc. Your Honors, the district court's ruling should be affirmed, and it should be affirmed because the appellant has failed to plead a disparate impact claim that is plausible. The record shows, the record before the district court and the record before the court here today, shows that the Pharmacy Action Act issue was a result of criminal forgery. No, I got that. But let me ask you this. Let's assume, and I'm not asking you to concede, but let's assume that it happens fairly often that pharmacists like doctors who have drug problems will use their position to forge prescriptions. And let's assume that, you know, there's more than just a trivial number of pharmacists across the country who have addictions and who forge in order to feed the addictions. And that the Walmart policy will, of course, for any of those who were caught and got adverse action by their board of pharmacy in the state, they're going to get fired. So let's assume that those are the facts. Does that mean that there's a tendency of the Walmart policy to screen out former drug addicts? The credentialing policy at issue, Your Honor, screens out the wrongful conduct. You know, I asked you a question and you didn't answer it. On the facts that I just proposed, does the Walmart policy have a tendency to screen out former drug addicts? That's a yes or no question. It could. It could tend to screen out recovering drug addicts. Again, that's a yes or no question rather than a maybe question. You can say no or you can say yes. Your Honor. Or you can say I don't know, but then I'll ask you why you don't know. Well, Your Honor, if I may explain the rationale behind my response to the court. Without yet giving me a yes or a no. Your Honor, the answer to your question under those facts is yes, however. There would be a tendency to screen out. It would be a tendency to screen out, Your Honor, under the facts that Your Honor presented. Okay. However, those aren't the facts before the court. Well, there aren't any facts before the court, of course. All we have is a pretty bare bones complaint. Well, we have the complaint that the appellant filed with the district court as well as we have the additional records from the state pharmacy board that are incorporated by reference, Your Honor. But I'm not asking you what happened to this person. I'm asking you whether the policy has a tendency to screen out former drug addicts. Under Your Honor's facts that he presented, yes, it could. It could. Okay. So is the problem then that the complaint is insufficiently pled? That is to say they didn't lay out what I just laid out? The complaint is insufficient, but in addition, this court should look at the fact that the allegations of the complaint incorporate the additional documents of the state pharmacy board. And in those facts that were before the district court and that are before the court today, what we have is the application of the credentialing policy that is facially neutral. It is rationally based. But the problem I've got at this step of the case, on my theory that I'm pushing you on, you don't necessarily lose because even if it has the tendency to screen out under the statute, you can advance job-related and business necessity. And if somebody actually has that record, you know, that's a good defense. If you say, well, this really is job-related, somebody who's not only going to be drug addicted but violate the law by criminal forgery, well, that's worse. So you're not necessarily going to lose merely by saying that this is a tendency to screen out. It's just you've got to put forward your business necessity defense. Yes, Your Honor. In addition, the qualification standard that's set out in the ADA that Your Honor was referencing, the qualifications are there that it's justified and that it's business-related. And in this instance... But the district court didn't reach that. The district court did not, Your Honor. And that's a defense, really. You can't oppose the complaint just by saying it's not in the complaint. You've got to assert it as a defense. However, this court in the case of Cummings v. City of Yuma concluded that where a disparate impact discrimination claim, where there was an affirmative defense apparent from the face of the complaint, it upheld the dismissal on a 12b-6 motion. Well, you know, even the screen out is not necessarily apparent from the face of the complaint, let alone the business necessity defense. Yes, Your Honor. My point in raising that case is just merely to point out that this court has upheld a 12b-6 dismissal of a disparate impact case in the past. Well, I'm not sure that case is really appropriate in this case. I mean, I'm kind of where Judge Fletcher is. It seems to me there is an affirmative defense for you to win, but I don't know if it's a motion to dismiss. We're in a motion to dismiss stage here. We're not on a motion for summary judgment. We're a motion to dismiss, and you have, appropriately so, put four documents in there that were talked about in the complaint, and therefore I can look at them. But I guess the reality is it seems to me that you disagree with Judge Fletcher's question when the facts are changed. So how does this particular case change the facts that he put to you in the hypothetical? In this particular case, what the appellant is asserting is that under a theory of the ADA not recognized by this court, that an individual who has an addiction-related disability, there is a violation of the ADA if a workplace policy tends to screen out individuals who are recovering drug addicts. And this court, as well as other federal courts, have already concluded that there is a distinction between disability and disability-related misconduct. Of course, sure. And here, in this particular instance, the application of Walmart's credentialing policy, as I stated before, it's patiently neutral, it's rationally based, and it applies to individuals who have a record of criminal forgery. Well, I don't know whether it applies to a record of criminal forgery or it applies to the history of adverse action against the licenses for any reason by the State Pharmacy Board. The credentialing policy at issue. I'm just taking the plaintiff's case as it is and giving his allegations the benefit of the doubt on a motion to dismiss. I don't think it has to do with forgery as such as to an adverse action against licenses by the board. The only reason the forgery comes in is because you put in why it happened and therefore we know it was a result of forgery. Hence my questions to the appellant. Yes, Your Honor, that is right. But the appellant is asserting that the motivation should have no bearing on the decision of this court nor the district court. Well, I'm not sure the motivation has any bearing on the question of tendency to screen out. It may well have a bearing on business assessment defense. Yes, Your Honor. Nevertheless, the motivation, in order for the plaintiff to prove his case, he must prove that he had a physical and mental impairment, that he was qualified, and that there was adverse action taken because of the disability. No, that's wrong. The statute says if it has a tendency to screen out. Those are the words of the statute. Your Honor, I'm looking at the court's holding in the Wellington v. Lyon County School District case from 1999 where the court stated that he must have a disability to establish an ADA claim, that he was qualified for the job in question, and that an adverse employment decision was based on the disability. And what case are you reading, and is this a screen-out case? This is a Wellington v. Lyon County School District. And no, Your Honor, it is not a disparate impact case. I should have said you're reading a different case. It's a disparate treatment case. Well, let's stay with the case we got. This is a screen-out case. So what do you have on a screen-out case? Your Honor, there are no cases dealing with disparate impact disability discrimination cases that have been dismissed. I can see that point, that there are none. But nevertheless, the reasoning is applicable because in both instances we have the disability-related misconduct that's at issue. I have to say I'm sympathetic to Walmart, and I'm sympathetic to the other side. I'm sympathetic to both. Walmart, by its policy, is trying to figure out an easy way to protect the integrity of its pharmacy products. And it says anybody who's had an adverse action by the pharmacy board of the state, we don't want them. I get it. So I'm sympathetic to what Walmart's trying to do, but it may be that it's under the statute sweeping with too broad a brush. It may end up having to say, okay, here's what we're trying to accomplish. Here's our business assessment. This is why it's job-related, rather than saying this doesn't have a tendency to screen out former drug addicts because it kind of looks like it does have the tendency to screen out former drug addicts. Your Honor, on the face of the complaint, along with the documents that are incorporated by reference, the decision in this particular instance as to this particular plaintiff show that he had a record of criminal forgery. Well, I get that, but that's not the question I'm asking you. I'm asking you whether the policy has a tendency to screen out former drug addicts. That's the question the statute asks. And, Your Honor, it could have a tendency to screen out potential drug addicts, but on the record before the court today, we're not able to make that determination. So are you saying that what we need to do is to send it back to see if he can amend the complaint to give us greater particularity? I mean, is this an Iqbal case? The standard is the Iqbal-Toomli, but here the... I understand Iqbal-Toomli does apply. What I'm trying to say is, are you telling me that if he were to allege what I've just proposed as a factual scenario, that he could get past the screen-out question and then we move on to business necessity and job-relatedness? There are a number of factual allegations that are not present in the complaint, including the... Well, the complaint basically says, kind of in a bare-bones way, it says this policy has a tendency to screen out. It doesn't give us any mechanism by which this happens, but it says it has a tendency to screen out. Are you saying we need a mechanism? Does it say we need some more detail as to how this is happening in order to comply with Iqbal? Not only that, but there are other allegations that weren't asserted by the appellant in this case, such as that he was disabled, that he was a qualified individual disability, that he was substantially limited, and he does not identify a major life activity. So there are a number of deficiencies, but amendment would be futile because the affirmative defense set out in the ADA itself with the qualification standards that Walmart applied. You just confused me. What did you say? What I'm saying, Your Honor, is that the amendment would be futile. Yeah, I got that part, but then it was the because part that confused me. Because of the qualification standards, and the qualification standards are the credentialing policy where Walmart need not hire or retain pharmacists that have a record of dishonest and dangerous behavior. Are you now talking business necessity? Yes, Your Honor, I'm talking about business necessity. I have trouble seeing that defense on the face of the complaint. I guess the worry I have, plaintiff has to show that the employment practices, which are facially neutral, fall more harshly on one group than another. Now, I have a tendency to agree this complaint does not lay it out. The judge dismissed without prejudice or with prejudice? With prejudice, Your Honor. Did counsel ever fight that at all? I mean, he doesn't suggest before us that that was a problem. Did he ever say anything to the court about that, district court below? Did he move for reconsideration or anything? No, Your Honor, the record before the court. Did he have a chance to amend his complaint many times prior to this? This is the first amended complaint as I understand it? Yes, Your Honor, it's the first amended complaint. So he's amended it already once to try to make a particular case? Yes, Your Honor. Did he amend it after you filed the motion to dismiss or before you got there? The first amended complaint was filed before the motion to dismiss. So the motion to dismiss was granted without leave to amend? That's correct, Your Honor. That's correct. Your Honor, I'm almost out of time, but I'd like to just stress that the plaintiff is seeking to recognize that the fact that he has an addiction-related disability gives him greater rights than an individual who may have been disciplined by the state pharmacy board but who was a current user. So therefore, the individual would not have been covered by the ADA. So the application of the policy as to both of those individuals, they would be screened out by Walmart's policy. But the plaintiff is arguing that based on the fact that he has an addiction-related disability, he has greater rights than the individual who was a current user, and that cannot be the holding. I think you're fighting the statute at that point. Yes, Your Honor. Because the statute does differentiate between those two groups. It does differentiate between those two groups. But we're talking about the application. On that one, you'd better go back to Congress. Your Honor, we're talking about the application of the credentialing policy as to those two individuals. It would have a different effect if the court were to recognize an individual with an addiction-related disability is given greater rights than somebody who's a current user. Thank you. Thank you, Your Honor. You sought to reserve some time, and we took you over. Why don't we put two minutes on the clock? Thank you. Walmart never argued Iqbal or Twombly issues, and the district court never had any Iqbal or Twombly problem with the complaint, and in fact concluded that it decided why Walmart did what it did, and it said that can't meet the statute, and so you lose no matter what you do with the complaint. Brian cannot amend his complaint to make it so, and the district court misread the ADA. You can't use the status conduct distinction from the disparate treatment cases to determine what a disparate impact pleading must say, and you can't find what an employer's motive was on the basis of no evidence but just counsel's assertion. Exhibit F is unintelligible. We don't even know if it's at the Walmart document. It's heavily redacted. It's incomplete, clearly inadmissible on a Rule 12 motion. So the reason why no one ever talked about amending the complaint is because the district court didn't see that problem that this court has raised today, and I question whether a pleading should or could describe the mechanism by which a neutral policy screens out disabled people beyond what we've done, which is to say he was drug addicted. The records in the record do say that. He was drug addicted, but his drug addiction caused him to do the forgery, and that a general board policy which suggests that one eliminates from employment or does not employ anybody that the pharmacy board has disallowed as a result of forgery causes the problem. But, Your Honor, I have to say the record is very clear that the pharmacy board of the state of Washington found him to be a drug addict. If you look at ER 2223, for example, those are the statement of charges. They say he admitted he was a drug addict. We're going to make him go to treatment if he wants his license back, and that's what he did. They sent him to drug court. They diverted his sentence for his criminal forgery. They sent him to drug court. Drug court requires him to get treatment, and he did that in a state pharmacy board-approved program, and he completed it. He's exactly what this part of the ADA is designed to protect. And for the court to dismiss this on a Rule 12 motion or any other motion on the basis of his past misconduct which led to his license suspension would eviscerate that protection. The ADA simply wouldn't apply to anyone who was a rehabilitated drug addict. Thank both sides for their arguments. Brian v. Wal-Mart Stores, submitter for decision. Thank you very much. The next case on our argument calendar this morning, Anderson v. Thompson Creek Mining Company. 10-1.
judges: W. Fletcher, Gould, N.R. Smith